UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAUGHN WILLIAMS,<br><br>Defendant. | Case No. 20-cr-10252-LTS |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States submits this Sentencing Memorandum in connection with the defendant Raughn Williams's sentencing, scheduled for November 19, 2021. In a plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States agreed to recommend a sentence of imprisonment at the low end of the Guidelines, based on a total offense level of 15. Pursuant to that agreement, the United States recommends a 41-month sentence of imprisonment, as well as supervised release for 3 years thereafter. The government asks that the Court impose this proposed sentence, because it represents the sentence that is sufficient, but not greater than necessary, to reflect the seriousness of the offense and to accomplish the goals of sentencing.

## FACTS

Williams has been convicted of one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). This charge stems from an incident on August 10, 2020. PSR ¶ 9. A Massachusetts State Police Trooper attempted to pull over a rental vehicle being driven by Williams on Storrow Drive Eastbound in Boston for excess tint. *Id.* When the trooper activated his lights, Williams accelerated at a high rate of speed and drove recklessly with officers in pursuit. He eventually struck and damaged two vehicles on Park Street in

Chelsea, one of which was occupied. PSR ¶¶ 9-11. Williams then fled his vehicle and was apprehended 10 minutes later in the area of Chester Avenue and Highland Street in Chelsea. PSR ¶ 12.

In Williams's pant leg, Troopers located and recovered a Smith & Wesson Model SD40VE, .40 caliber pistol, loaded with one round of .40 caliber ammunition in the chamber and 13 rounds of .40 caliber ammunition in the magazine. PSR ¶ 13. An ATF interstate nexus expert determined the firearm frame and all of the ammunition had been manufactured outside of Massachusetts. PSR ¶ 16. Smith & Wesson records reveal the firearm was first sold to a dealer in West Virginia. PSR ¶ 17. At the time of the incident, Williams knew that he had been convicted in a court of an offense punishable by a term of imprisonment of more than one year, because he had previously served a two-year sentence for a prior conviction. PSR ¶ 8.

Troopers also located on Williams two baggies that were confirmed to contain approximately 10 ounces of cocaine base, as well as two baggies containing substances that were not controlled substances. PSR ¶ 18. Troopers also located two scales and several empty clear baggies with white powdery residue inside his car. PSR ¶ 14. At booking, Williams made a phone call in which he stated, "Yo, they found my fucking heat and my fucking work," in reference to the gun and the drugs. PSR ¶ 13.

Because the material facts are unopposed, an evidentiary sentencing hearing is not necessary.

## DISCUSSION

### I.  Sentencing Guideline Calculation

The United States Probation Office ("Probation") calculates Williams's total offense level as 21, based on a base offense level of 20, a four-level increase for possessing the gun in connection

with another felony, and a three-level reduction for prompt acceptance of responsibility.  Probation calculates his criminal history category as VI.  Accordingly, Probation has calculated a guideline sentencing range ("GSR") in this case to include a term of incarceration from 77-96 months, to be followed up a term of supervised release of 1-3 years; a fine of $15,000 to $150,000, and a special assessment of $100.

The Government concurs with Probation on the defendant's criminal history category, the application of a four-level increase for possession of a firearm in connection with the felony of possession of controlled substance with the intent to distribute, and the three-level reduction for prompt acceptance of responsibility.  However, the Government begins its calculations with a base offense level of 14, pursuant to USSG § 2K2.1(a)(6); accordingly, it calculates the total offense level as 15, resulting in a GSR of 41-51 months.

Probation calculated the defendant's base offense level as 20 under USSG § 2K2.1(a)(6), concluding that the defendant committed the instant offense after sustaining a felony conviction for a crime of violence. PSR ¶ 26.  The Defendant submitted a written objection (Objection No. 2) to the application of this base offense level.  For the reasons stated by the Defendant, as well as in light of the parties' plea agreement, the Government urges the Court to calculate the base offense level as 14 and the total offense level as 15.

## II.     Application of the Section 3553(a) Factors

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2).  These factors include the nature and circumstances of the offenses and the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just

punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide for the needs of the defendant. They also require courts to consider the kinds of sentences available and the GSR. In this case, these factors point to a sentence of imprisonment of 41 months, and to three years of supervised release.

    A. **Nature and Circumstances of the Offense; Need for Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment and Deterrence, and Protect the Public**

In analyzing the 'nature and circumstances of the offense" in this case, the Court should consider the circumstances of the defendant's arrest. He was armed with a loaded firearm, which he possessed in connection with his sale of illegal drugs, and he led police on a car chase through Boston and into Chelsea, and in the process struck two vehicles, one of which was occupied. This was extremely dangerous, reckless behavior.

One need look no further than the daily newspaper to see the danger that illegal firearms pose in the streets of Boston. In 2020, there were 276 shooting victims in Boston. *See* BPD Crime Data, https://static1.squarespace.com/static/5086f19ce4b0ad16ff15598d/t/5ff37b7f0e058f15c9d98ef2/1609792383700/Shootins+Weekly+Crime+Overview_+2020+Year+End+4.pdf (last accessed November 12, 2021).

Against this backdrop, it is important to send a message that gun crime cannot be tolerated, particularly from people who have already been convicted of such crimes before. *See United States v. Laury*, 985 F.2d 1293, 1310 (5th Cir. 1993) (repeated convictions displayed tendency towards recidivism that warranted more serious sentence); *United States v. Smith*, 505 F.3d 463, 470 (6th Cir. 2007) (imposing above guidelines sentence where it was obvious that prior incarceration "was obviously not sufficient to comply with the purposes of § 3553(a)(2)").

The government notes that although the defendant said he had a gun "for protection," that protection was necessary only because of his involvement in illegal drug activity. PSR ¶¶ 14-15, 18.

Moreover, this Court should consider the defendant's relevant conduct – the fact that he fled from police leading to a car chase through city streets, possessed cocaine base at the time of his arrest, and possessed the firearm in connection with illegal drug distribution – in arriving at an appropriate sentence. PSR ¶ 18. Illegal drugs have been linked to any number of societal harms, including intractable addictions and fatal overdoses. The impact on the community of Williams's dangerous activity cannot be overlooked at sentencing.

A 41-month sentence of imprisonment, followed by three years of supervised release, is sufficient, but not greater than necessary, to reflect the serious circumstances of this offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public from further crimes of the defendant.

B. **The History and Characteristics of the Defendant**

The government acknowledges certain points that are reflected in the PSR. The defendant had a difficult childhood under circumstances no child should endure. His father was often absent, and when present was physically abusive to the defendant and his mother. His family suffered from financial hardship. There was instability in his living and custody arrangements. PSR ¶¶ 52-53. The defendant was exposed to substance abuse and violence in his neighborhood, and eventually began abusing substances himself. PSR ¶¶ 54, 70. Despite the challenging circumstances of his childhood and his eventual DYS involvement, the defendant was able to obtain his GED. PSR ¶ 71. The defendant remains close with several members of his family who live nearby. PSR ¶¶ 57-61. The defendant has a six-month old daughter, who

was born after he was in custody in this matter. PSR ¶ 64. He has described his daughter as a motivating factor to turn his life around, and he does not want to be absent from her life. PSR ¶¶ 64, 69.

However, the government's recommendation must also consider other, less sympathetic personal characteristics. For one so young, the defendant has a serious criminal history, starting at age 16. PSR ¶ 37. As an adult the defendant served a 2-year sentence for assault with a dangerous weapon and possessing a loaded firearm without a permit. PSR ¶ 42. That the defendant was recently convicted for essentially the same offense, and so quickly re-offended, is particularly troubling. *See United States v. Schmude*, 901 F.2d 555, 559 (7th Cir. 1990) ("[r]ationally, if a defendant has been convicted for the same offense more than once, he has demonstrated the need for greater sanctions to deter him from committing that same crime again -- greater sanctions than might be required for a defendant who has never been convicted of a similar offense"). He was also previously convicted for engaging police in pursuit and resisting arrest, in an incident in which the defendant led police on a high-speed chase through city streets and onto an interstate highway – again, conduct similar to his conduct here. PSR ¶ 43. Moreover, the defendant committed this offense while on probation out of the Dorchester division of the Boston Municipal Court. PSR ¶ 45. Additionally, after his arrest in the related state case but prior to his federal indictment, while he was in custody in Nashua Street Jail in October 2020, the defendant allegedly punched another inmate in the back of the head, resulting in injury that required hospitalization. PSR ¶ 48. These factors suggest that – at least prior to this point – the defendant has not grasped the harm that he is causing by his actions nor resolved to live differently, and a substantial sentence is necessary to punish the defendant, deter him and others from such crimes, and to protect the public.

That said, the government also has considered that the defendant is young – only 23 years old – and that this is his third criminal case as an adult. In recommending the 41-month sentence – roughly 3.5 years – the government has also considered that the longest sentence the defendant has previously served was 2 years, and this represents nearly twice that. The government has further considered that the defendant was detained in state custody for 10 months after his arrest on a probation violation, and will not receive federal credit for that time; accordingly, if the government's recommendation is accepted, the defendant will have served 51 months following his arrest – a substantial sentence. The government has also given weight to the fact that the defendant pleaded guilty promptly in this case, approximately eight months after his indictment, and prior to significant litigation, thus saving government resources.

Probation's guidelines calculation is driven by the application of a higher base offense level due to the defendant's prior commission of a "crime of violence" – an assault with a dangerous weapon. Even if it is proper under a strict application of the Guidelines, the application of that enhancement here results in a disproportionate sentence. The government believes that a sentence at the low end of the Guidelines as calculated by Probation – nearly 6.5 years – is greater than necessary for this particular defendant given his particular circumstances set out above and in the PSR.

Instead, a sentence of 41 months, followed by three years of supervised release with the special conditions recommended by Probation to assist the defendant in charting a new course, properly acknowledges and balances the § 3553(a) factors.

## CONCLUSION

A sentence of incarceration of 41 months, along with a significant period of supervised release, properly reflects the seriousness of the offenses of conviction, promotes respect for the

law, adequately punishes Williams for his criminal conduct, deters him and others from offending in the same way again, and protects the public.

For the foregoing reasons, and those to be articulated at the sentencing hearing, the government respectfully recommends that this Court impose a sentence of 41 months imprisonment, to be followed by a three-year term of supervised release, as well as the required $100 special assessment and forfeiture as set forth in the Plea Agreement.

Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing. Accordingly, the government asks that the Court impose the proposed sentence.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

*/s/ Elianna J. Nuzum*
Elianna J. Nuzum
Assistant United States Attorneys
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, MA 02210
elianna.nuzum@usdoj.gov
617.748.3100

Dated: November 15, 2021

### CERTIFICATE OF SERVICE

Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Elianna J. Nuzum*
Elianna J. Nuzum
Assistant United States Attorney

Dated: November 15, 2021